Case number 22-1217, et al. Sierra Club Petitioner v. United States Department of Energy. Ms. Eberle for the petitioner, Mr. Anderson for the respondent, Mr. Brightfield for the interveners. Good morning, and may it please the Court. My name is Louisa Eberle, representing Petitioner Sierra Club. I'd like to reserve three minutes for rebuttal. These cases challenge the Department of Energy's orders authorizing exports from two liquefied natural gas terminals along the Gulf Coast. We're here because Energy says that Sierra Club isn't entitled to review of the agency's responses to our comments, even though we followed its instruction. Today, I'll talk about three things. First, the jurisdictional issues. Second, Energy's arbitrary denials of three hearing requests. And third, the merits of two NEPA claims that are ripe for this Court's review. But to set the stage, Energy has chosen an unusual process for approving, for evaluating export applications. Energy decided to conduct several general studies with general comment periods. And Energy instructed commenters not to resubmit their comments in project-specific dockets, including the two dockets here. So that's what we did. But now Energy has changed its mind. So turning to the threshold jurisdictional issues. On standing, the only dispute is whether these orders will actually increase the volumes of exported gas. Energy argues that these orders don't increase the amount that the companies are authorized to export. But what they do is allow the companies to export gas to countries that actually want to buy it. So as a practical matter, these orders will increase the gas that can be exported by at least 12%. Energy assumed that these amendment orders would increase gas exports. And those assumptions are entirely warranted, given basic facts about the LNG market and economic principles. The requirement to establish standing isn't, though, that we assume something is going to happen. It's that you establish a substantial probability of injury. And a lot of the facts in the record that you point to are in your reply brief. And I remind you of Sierra Club versus EPA from 2002 and our Circuit Rule 28A7 that say that you are supposed to in support of standing in your opening brief, not in your reply brief. So, A, why should we entertain or consider at all any facts that you revert to for the first time in your reply brief? And, B, if we don't consider any of those facts in your reply brief, what in your opening brief establishes that substantial probability of injury? As to your first question, the purpose of averring facts in the opening brief is to facilitate the parties to litigate the issues. And here, we have fully been able to litigate this. Well, we don't know what the response is to the facts that you put out in your reply brief because the respondents and interveners don't have a SIR reply. And it's not guaranteed that we're going to hear arguments. I mean, nobody's entitled to argue. Yes, Your Honor. Our reply brief doesn't just raise new facts. It points out the basic economic principles and common sense that are at issue here. And Energy's own orders and the general studies that are cited refer and assume that the orders here will, as a practical matter, increase exports. So, even if this Court doesn't reach the issues in the reply brief, there's still sufficient evidence here and common sense and economic principles to support a finding of standing in this case. And those basic economic principles are that more countries available for exports broadens the market and makes it easier for the companies to actually sell the gas. There's nothing in the... But we don't know whether they would sell all the gas anyway. There's strong indications and a substantial probability here that without these non-FTA approvals, they would not be able to sell this gas. It's just a handful of countries. Only seven countries received US LNGs in 2016. And... Facts from your reply brief. Those weren't facts in your opening brief. Correct. But the assumptions that Energy made were that these amendments would increase exports. They relied on the benefits that would come from increased exports throughout the orders here. Can I ask, were you on notice that there would be a strong argument against standing, given that the agency in the prior proceedings conceded that there would be an increase in exports of US LNG associated with these applications? And I'm just unclear as to what the posture was when you wrote your opening brief and whether your arguments in your reply brief were in response to a more specific argument that maybe you couldn't have anticipated. Yes, Judge Pan. Our opening brief was replying and anticipating what Energy had assumed in its orders, which was that the non-Free Trade Agreement approvals here are critical to actually exporting this entire amount of gas. So we were responding to that and our reply brief provided some additional information to flesh that out. But yes, based on what we had previously seen, Energy had never previously articulated in the orders that it anticipated these non-Free Trade Agreement orders would simply allow the companies to displace gas that would otherwise be sold. Turning to party status, Energy waived this claim processing argument by waiting until litigation to raise it. The text of the Natural Gas Act does not frame party status as a jurisdictional bar. And this court has actually granted equitable exceptions to non-parties. And that type of equitable exception is only allowed because this is a claim processing rule. And even if Energy didn't waive this argument, Sierra Club properly intervened here. Where is the grant of jurisdiction for our court to review this order? The grant of jurisdiction... It's in 717RB, right? Yes. On the filing of such petitions, such court shall have jurisdiction. And the such petition refers up to the aggrieved party. It refers up to a petition that needs to be filed. Petition filed by the aggrieved party. It doesn't explicitly tie the party portion to the petition requirement. And under Supreme Court precedent, it has to be a very clear statement by Congress. And so this simply isn't that clear statement that's required. So it's not a jurisdictional bar. And again, even if this is a jurisdictional issue and Energy didn't waive it, we properly intervened. Energy never indicated that the proceedings had terminated. And instead, Energy kept these proceedings active by choosing to use them for the amendment in gas increase orders at issue here. Because this court has jurisdiction, I'll turn to why Energy's rehearing orders were arbitrary. This is not a case where Sierra Club waited until the last minute. Energy knew our concerns and actually addressed most of them. But for the first time ever, Energy said that Sierra Club needed to re-protest. In its brief, Energy now admits that a party may object through a motion to intervene instead. And this lets the horse out of the barn. The rules provide multiple avenues. Where did they say that? They said that there's a header on page 30 of their brief, and then also pages 35 and 38. And they refer to motions intervene as an acceptable alternative to protest. So the rules provide multiple other vehicles for participation. Oh, the motion to intervene, but the petition for rehearing. That's not some... They have not conceded that the petition for rehearing can be filed instead of the protest. Correct. They... Yes, their argument is that... So I just want to ask, why didn't you file a protest in this case? Because it seems that you've done this many times before, and you've normally filed a protest before then filing a petition for rehearing. So why we didn't file isn't at issue because we're not claiming that we had good cause for not filing. But ultimately, we didn't file a protest because we didn't think that we were required to. And we weren't required to based on the rules. So have you ever before filed or appeared for the first time at the petition for hearing stage and not filed a protest? I am not aware of a time with this exact fact pattern in the past. But if you thought that that was the procedure, why would you ever file a protest? So there was one prior example with respect to Jordan Cove, the LNG terminal at Jordan Cove, and there we filed a protest. But the protest raised issues that went beyond the kind of general proceeding type comments that are at issue here, and actually went into raising concerns about the scope of the comment period. So is your answer that you're not aware of any other time that Sierra Club has come in at the petition for rehearing stage and not first filed a protest? I am not aware of one. So it just strikes me that you've framed your argument here as one of arbitrary and capricious action by the agency. And how is it arbitrary and capricious for an agency to deny your petition because you didn't follow their procedural rules if they're applying those procedural rules consistently? How is that arbitrary and capricious? The issue is that they're not applying this consistently. They have never done this before. But you've just said you've never done this before. Are you aware of any other incident or action where a party came in just at the petition for rehearing stage and never filed a protest first, and were allowed to have their claim heard? There are other examples where we have filed a motion to intervene without filing a protest. That wasn't my question. And here we did file a motion. That wasn't my question. Can you answer my question? I'm not aware of another example exactly like this. Then how are they not applying their rule consistently? Because they gave us instructions that told us that we didn't need to the general studies. In the notices for the general studies, they explicitly stated that commenters on the general studies need not refile in the project-specific dockets. And those notices listed out several dockets, including the two that are at issue here. And so by filing our comments in those dockets, then NRG posted our comments from those general proceedings into the dockets at issue here. Are you aware of any other time in which you were able to preserve a claim in a petition for a hearing by just objecting to the studies and not filing a protest? I am not aware of that. But the distinguishing issue here is that we had raised these issues before. So the agency was aware of... All I'm trying to get at, counsel, is that you're saying this was arbitrary and capricious. But if they're applying their rules consistently, I don't see why it's arbitrary and capricious. And you can't identify any other time where they've applied these rules in a way that's different from how they did this time. You're saying this is the first time, I guess, that you're raising this issue. So I just don't see why that's arbitrary and capricious. It's arbitrary and capricious because every indication given to us was that this was the proper way to proceed. And only after the fact did Energy indicate that this was a different interpretation. And there's no support for Energy's position that these other forms of participation, including the additional procedures that Energy themselves created. They created these other additional procedures in the general dockets. They told commenters that commenters need not submit their comments in these other project-specific dockets. And we followed those instructions. There was nothing else in the rules to indicate that we needed to do this differently. And so the fact that Energy is changing the goalpost after the fact, based on things that actually aren't in the rules, is what makes this an arbitrary denial of our rehearing requests. We'll give you some time on rebuttal. We'll hear from respondent. Good morning, Your Honors. Christopher Anderson for the Department of Energy. I'd just like to make a couple of quick points on the jurisdictional arguments before turning to the merits. First, on standing, it was Sierra Club's burden to establish a substantial likelihood that these orders, if vacated, would result in fewer exports and less vessel traffic in the areas frequented by their members. Sierra Club didn't even attempt to do that in its opening brief. And in its reply brief, it merely refers to basic principles of economics. There is no basic principle of economics, however. Can I ask you, though, is it true that you didn't make the argument in the proceedings below that there's going to be a displacement, that that's all that there is here, so therefore not a net increase in exports? So we did not address standing below because of an administrative proceeding, but we disagree with Sierra Club's characterization of what the department said. The department hypothesized that these orders would increase shipments so that it could analyze what those, what the effects of those shipments might be on energy markets and on the environment. But hypothesizing that that might happen is not sufficient to establish a substantial likelihood that it will happen for standing purposes. And if the department didn't do that, there would be little point in the public interest analysis that's required to be adopted as part of the Natural Gas Act. It seems, though, the way it was, at least one of these examples was phrased was your order acknowledging that there will be an increase in exports of US LNG associated with the applications, but you can't conclude that these exports would increase global GHG emissions in a material or predictable way. That seems to be a concession, that there's going to be an increase in exports. You just don't know what the effect of. Well, the analysis looks at all exports, both to free trade agreement nations and non-free trade agreement nations. Now, the free trade agreement nations have to be approved by statute, but. But this was associated with the applications, which was for an increase in the non-FTA. I believe both companies applied for both free trade agreement and non-free trade agreement increases in the same application. They were granted in different orders, however. But the fact that energy didn't distinguish in its analysis of the exports between free trade agreement and non-free trade agreement nations doesn't relieve Sierra Club of its burden to show that if this court grants the relief that it's requested, that that relief will actually or with a substantial likelihood address the injuries that their members assert. I guess the thing that I'm trying to figure out is. If you took a position previously. Conceding that exports would go up and then Sierra Club says in their opening brief, exports are going to go up and that's going to injure our members and then you make a more specific argument about displacement of energy, et cetera, in your opposition brief. May Sierra Club then in their reply brief address this displacement argument that you raised for the first time in your opposition brief. So I don't think so, Your Honor. Under this court's precedent, it's their burden to establish all the facts necessary to establish standing in their opening brief. But even if you consider the facts that they presented in the reply brief, we don't think those are sufficient to establish the substantial likelihood that's required for them to show that that their members injuries are actually redressable. I support. It seems to me that your argument seems to assume that they can max out their exports to the FTA countries and therefore adding the non FTA countries doesn't increase exports, but I don't know that that's supported by the record. Why would they even ask for the non FTA countries if they're already maxing out using the FTA? So to take your second question first, I think there are a number of reasons why the companies might want the additional export authority. It is true that it creates more customers. There might be better prices in different markets. It might make it easier for them to find their customers. But the fact that it might make it easier for them to sell the full amount of their authorizations doesn't mean that there's a substantial likelihood that they won't be able to find free trade agreement customers for the full volume. So that is why they might seek it. Energy does not forecast whether the companies will or will not be able to sell the full amount of their authorizations. Energy, for purposes of analysis, assumes that the full amount authorized will be exported. But that isn't a concession that that is necessarily true or that the both authorizations required for that to pass. It's simply an assumption for analysis purposes and not a forecast of actual market conditions. But standing requires actual facts on the ground. And that's why it was Sierra Club's burden to provide some market analysis, at least, that would make it plausible that these companies wouldn't. And we're only talking about approximately an eighth of their authorizations. Were this a different situation with different percentages, maybe Sierra Club's common sense argument would have some merit. But in this case, when you're talking about a slice of what's authorized, we think they need to do more. I mean, whether this is waived or not is another question. But it seems that they said that in order for the FTA markets to absorb this additional capacity, the existing levels would have to go up by 43 percent or 47 percent, something like that. And that seems to indicate that they're not currently maxed out, which means that adding this ability to sell to non-FTA countries would likely increase exports. So I think whether there's a substantial likelihood is a judgment for the court to make. But I would say the orders, all of these orders presuppose that the market for liquefied natural gas will expand. If not, you know, if there were no more demand what's currently in the market and no company would seek to enter the market to sell gas. The other thing that I would say about that is even the statistics that they cite, which are just for last year and are not projections of the future, show that there is enough demand from existing demand from free trade agreement countries to absorb the volumes that we're talking about here. And so I don't think that that alone is sufficient to establish the substantial likelihood that they need. If I could move on to the intervention point and the party status. So this court has held that party status is jurisdictional. It held it in 1960. It's reiterated that point on several occasions. But even if that weren't stare decisis, I think that the text of 717-R is pretty clear that party status is part of the jurisdictional grant in that statute. 717-RB begins any party to a proceeding may obtain review. And I would also refer the court back up to 717-RA, which says that no proceeding to review any order of the commission shall be brought by any person. Any person refers up to the top of the paragraph, which is any person which is a party to the proceeding. So we think that it's pretty clear that the statute only contemplates the parties to the proceeding may seek judicial review. Their argument is that they were a party to the proceeding because this proceeding is the same as the prior proceeding where they were explicitly, affirmatively took steps to become a party. That is their argument, Your Honor, but it's incorrect under the department's rules. The department's rules clearly distinguish between dockets and proceedings. Dockets are essentially files that contain the administrative record. Proceedings is the process by which energy receives, evaluates, and makes a final order on an application. How does one know when one proceeding stops and another one begins? Sure, a proceeding begins filing an application and it stops with the issuance of a final order subject only to any proper request for hearing and judicial review. And in this case, the proceedings that Sierra Club says that they intervened in, in fact, they did intervene in, ended years ago when the department issued final orders. Sierra Club sought rehearing. The department denied rehearing and then Sierra Club declined to seek judicial review. That brought that process to an end. And having that beginning and end, Your Honor, I think is really important, not just for the department, but also for the parties. Applicants need to know when their applications are approved or denied with finality so that they can plan their affairs. And the department needs to know when it can deem proceedings to be closed so that it can move on to address new applications and issues. So, are you saying that you require a new motion for intervention for any amendment or upgrade or any additional proceedings? For any new application, if a party has intervened in a proceeding on an application and that proceeding has terminated, which is undisputably the case here, then if there's... Just because you issued an order on that first application? Yes, yes. So, it seems that in Jordan Cove, that's not what happened, right? So, Jordan Cove was a different procedural... The department followed a different procedure that it no longer follows. So, Jordan Cove, the department issued a conditional, not a final order. And subsequent to that conditional order, Jordan Cove moved to amend its application. And Sierra Club did actually file a protest in response to that amendment, but there wasn't a final order, so that proceeding hadn't terminated. Okay. They just didn't have to file another motion to intervene. Exactly, Your Honor. Exactly. But in this case, the proceeding had terminated and it was necessary for Sierra Club to file a new motion to intervene in response to the application. So, it's your practice in all these cases to require another motion to intervene? So, this has not happened before that we're aware of that a proceeding has terminated, a new application has been filed, and a party hasn't voluntarily issued or submitted a new motion to intervene or a protest in the application. So, this is really a situation of first impression for the department. So, people normally routinely file a second motion to intervene? I am not aware of whether they routinely file motions to intervene or just protests. I can check with the department and provide you more information. I don't want to speak out of turn. But they can file a protest, but then they're not a party. That's correct. I see. We've never had, I can tell you, Your Honor, we've never had a circumstance where there was an application, a person did not file a motion to intervene, and then that person also attempted to seek rehearing after the final order. That has never happened before, and that was the issue of first impression that the department decided in these orders. I see my time's up. If the court has no further questions, we would ask that the petition be dismissed or denied. Thank you. Counsel for interveners? May it please the court. Jonathan Brightbill from Winston & Shaw, and I'm here to address the merits, and in particular that a federal agency only has the statutory authority that Congress grants it. Statutory Interpretation 101 has at least two administrative agencies, and the Department of Energy itself has said that under Section 3A of the Natural Gas Act, it does not have the statutory authority to consider environmental effects that are upstream and beyond and downstream and below marine transportation of natural gas when it is making an export authorization determination for a non-free trade agreement country. DOE has enshrined this statutory interpretation into law by way of a duly promulgated final regulation that was subject to notice and comment rulemaking and created, need the categorical exception, B-5-7. So, the principles of the Supreme Court's precedents, including public citizens and then this Court's subsequent decisions, applying public citizens to instances where you're dealing with administrative agencies with limits on their statutory authority, mean that such an agency also does not have to do NEPA as to such questions. So, notably here, I know the million-dollar question that you all want to know is, like, okay, how do we get to that, right? And I think— Can I ask you a question, Counselor? Sure. Was this argument that you're making raised by one of the parties? Because as an intervener, you can only raise arguments that were raised by the parties. Isn't that right? So, with respect to that case law, someone made the point that we don't get a SIR reply, and in fact, the case law here in the D.C. Circuit is different as it relates to respondent intervenors as compared to petitioner intervenors. In fact, Judge Wilkins, one of your per curiam opinions in Mozilla v. FCC is really the precedent of the type to look at as it relates to the type of argument that we're bringing here. So, that was 940F3-1, which derives from a long line of precedents from this Court that different circumstances here where we have a respondent intervenor who is presenting arguments that were made before the agency. Sierra Club—and I can cite you to those parts of the Joint Appendix as well, Joint Appendix 411 to 412, Joint Appendix 414. So, Sierra Club itself, before the agency, recognized that the issue of the agency's statutory authority to consider indirect effects, cumulative effects, greenhouse gas emissions around the world, that that was a gating issue under the Supreme Court's public citizens precedent and this Court's precedents under Freeport and very recently back in May as it relates to the Department of Energy and FERC and their application of the Natural Gas Act. These are pretty important issues you're asking us to address in the context of a case where there may be three different reasons why we either shouldn't or can't get to the merits. We acknowledge, Your Honor, that there are some predicate issues here that the Court may very well want to reach first, may very well reach first, standing, obviously, than the procedural question. But this is a gating question that comes between the merits issues that have been  And this Court concludes, as it should already, because what we're really talking about here is the flip side of what this Court has already held with respect to the Natural Gas Act and FERC in Freeport I and more recently in the Center for Biological Diversity v. FERC case, which we cited in our 28J case. In those decisions, this Court recognized that under the public citizen standard where you have the Natural Gas Act, and there we were talking about FERC, but because the Department of Energy has exclusive authority regarding the export question, FERC doesn't have to do NEPA on the questions that are beyond their authority and within the exclusive authority of the Department of Energy. This is a mirror image of those holdings and of those cases. It's the same statute. If you go to that statute, you can read in Section 3E that FERC, so now we're talking about upstream from DOE, has exclusive authority to approve or deny an application for the expansion or operation of an LNG terminal. So there's no question, there should be really no question under this Court's prior decisions that DOE does not have the authority to look upstream. And with respect to downstream and beyond marine transportation effects, we have the insights of the agency itself construing its own statute that at the point at which marine transportation passes into international waters, that is now likewise also beyond their statutory regulatory authority, beyond the scope of what they look at for purposes of a public interest in health, and therefore also do not have to do NEPA. They, that is why they did the categorical exclusion for marine transport because that is the scope of their authority and their authorization and the scope of the environmental effects that they've argued that they can consider. Although my client wouldn't actually see even that aspect of it, but it's secondary for purposes of this procedure. All right. If you could bring your argument to a conclusion. Okay. I just want to make sure in terms of, you know, Sonoma's, in terms of the presentation of this, Sonoma Financial Corp. 952 F. 2nd 426, Village of Bennesville V. F. FAA 457 F. 3rd 52. It's a different standard when you're dealing with an intervener who presented these arguments below. We unquestionably did. We responded to the Sierra Club having raised these. We sought leave to answer. We did answer. We intervened in this case to make these arguments. And this court's precedents we feel are very strong that these preceding issues to getting to their procedural alleged procedural snafu's properly before this court and should cut off any determination on the merits for Sierra Club into the country. There should be no remand. It should be resolved here. As you said, Judge Wilkins, rule one, just speedy, efficient result of cases. My clients do not want to go back to the agency. They want it to resolve here and it can be resolved here on the merits. If you get past procedural issues, not sure. Rule one applies in the administrative context. All right. Thank you. All right, we'll give you we'll give you three minutes for rebuttal. Thank you, Your Honor. Starting on standing, I just want to flag that the orders here were about the non-free trade agreement approvals specifically and only about the non-FTA portion. It didn't cover the FTA portion. So the citations that we gave to those orders where DOE assumed that exports would increase as a result, those were related to the non-free trade agreement approvals here. In the airlines for America case that we cite in our reply brief, that case found that there is no additional evidence required if basic economic principles support a presumption. And here, well there, the situation was that TSA had increased fees and that would therefore increase airline prices and reduce demand harming airlines. The airlines had standing in that case. And there's no evidence to support the speculation here that there is enough demand in free trade agreement countries. Judge Pan, as you noted, sending all of this gas only to free trade agreement countries would require a 47% increase in the amount that those countries received as of 2022. And then turning to the party status issue, the cases cited by the department refer to person aggrieved, not talking about the party status requirement. And Energy just acknowledged that they were claimed that they changed their policy since Jordan Cove, but they haven't actually announced a new rule here. This isn't a place where they announced a new rule in the rehearing orders. They didn't challenge our party status in the rehearing orders at all. And if they had, we would have had an opportunity to address that potentially through late filed motion to intervene. And the notices here were referring to amendment application. So that gave us the indication that they meant for the proceedings to continue. And then turning to the discussion about whether a protest was required, the department concedes that protests are not required and that they're not the only vehicle for providing objections to the department. You can do that through a motion to intervene, which we did. You can do that through the additional procedures, which we did here. This is a special situation because Energy has used these additional procedures opened in the general studies in order to accept party objections. We've complied with those instructions. And for those reasons, Energy's denial of our rehearing request was arbitrary. We ask this court to vacate the orders, rule now on the two legal issues that we will rest on the briefs for, and remand to Energy. Thank you. All right. Thank you. The case is submitted.
judges: Wilkins, Katsas, Pan